1
2
3
4
5
6
7
8
9                    UNITED STATES DISTRICT COURT

10                  SOUTHERN DISTRICT OF CALIFORNIA

11

12

13   **JUDE P. NWANDU,**                    Civil No. 06CV0999 MMA (WMc)

14                           Plaintiff,     **REPORT AND RECOMMENDATION**
                                            **GRANTING IN PART AND DENYING**
15              **v.**                        **IN PART DEFENDANTS' MOTION**
                                            **FOR SUMMARY JUDGMENT**
16   **SERGEANT V. BACH, et al.,**

17                          Defendants.

18

19

20                        **I.  INTRODUCTION**

21       Jude P. Nwandu ("Plaintiff"), a California state prisoner currently incarcerated at

22   Ironwood State Prison, proceeding *pro se*, has filed this civil rights action pursuant to 42 U.S.C.

23   §1983.  [Doc. no. SAC 80.]  Plaintiff claims Defendants Bach, Davila, Castillo, and Taylor

24   violated his civil rights while he was incarcerated at Calipatria State Prison in Calipatria,

     California.  Specifically, Plaintiff alleges Defendants Bach and Castillo used excessive force and

25   were deliberately indifferent to Plaintiff's medical needs in violation of the Eighth Amendment.

26   [Doc. no. SAC 80.]  Plaintiff also alleges Defendants Davila and Taylor engaged in retaliatory

27   property deprivation in violation of the First and Fourteenth Amendments and all four

28

                                    1

1    Defendants engaged in a conspiracy to chill Plaintiff's use of the prison grievance system. [Doc.

2    no. SAC 80.]

3        The Court submits this Report and Recommendation to the Honorable Michael M.

4    Anello, United States District Judge, pursuant to 28 U.S.C. §636(b)(1) and Local Rule 72.3 of

5    the United States District Court for the Southern District of California.  After reviewing the

6    pleadings, parties' briefs, declarations, and exhibits filed in support thereof, for the reasons set

7    forth below, the Court RECOMMENDS the Defendants' Motion for Summary Judgment be

8    **GRANTED in part, and DENIED in part.**

9                    **II.   FACTUAL BACKGROUND**

10       Plaintiff's claims arise out of events that occurred on March 1, 2005, while he was

11   incarcerated at Calipatria State Prison.  [Doc. no. 80 SAC.]   On that date, Defendants Bach,

12   Davila, Castillo, and Taylor were assigned to work in Facility A at Calipatria State Prison, where

13   Plaintiff was housed.  [Doc. no. 83-9 Bach Decl. ¶ 6; Doc. nos. 83-2, 83-3, 83-7.]

14       On March 1, 2005, an inmate named Wilson was assigned to Plaintiff's cell and Plaintiff

15   was instructed to accept Wilson as a cellmate. [Doc. 80 SAC ¶6-7; Doc. 83-9 Bach Decl. ¶6.]

16   Plaintiff was under the impression he would be housed in the cell alone. [Doc. 80 SAC ¶6; Doc.

17   93-2 Nwandu Decl. ¶12.]   A dispute arose between Plaintiff and Wilson over whether they

18   would share a cell and who would have the bottom bunk. [Doc. no. 80 SAC ¶ 16-17.]  It appears

19   Wilson informed Defendants about the dispute. [*Id.*]  Wilson told Defendants Plaintiff threatened

20   him. [Doc. no. 80 SAC ¶¶13-14, 17.]  According to Defendants, when Wilson entered the cell,

21   Plaintiff told him "he was walking into some shit" and refused to accept him. [Doc. no. 83-7

22   Taylor Decl. ¶ 3 and Ex. A.]   Plaintiff asserts Wilson was lying about Plaintiff's threats and

23   Defendants falsely accused Plaintiff of threatening Wilson. [Doc. no. 80 SAC ¶¶13-14, 17.]

24   When Wilson still had not moved into Plaintiff's cell, Defendant Davila told Plaintiff to "cuff-

25   up" and Plaintiff responded, "You might want to have me speak with your higher officer." [Doc.

26   no. 80 SAC ¶20; Doc. no. 93-2 Nwandu Decl. ¶17.]  Thereafter, Defendant Bach arrived at

27   Plaintiff's cell and ordered him to turn around to be placed in handcuffs. [Doc. no. 93-2 Nwandu

28   Decl. ¶17; Doc. no. 83-9 Bach Decl. ¶7.]  Defendant Bach ordered Plaintiff placed in handcuffs

2

because it was close to time for count and they needed to get the matter resolved. [Doc. no 83-9 Bach Decl. ¶7.]

Plaintiff informed Defendant Bach he had a medical chronology for arthritic shoulder pain, which recommends Plaintiff be placed in waist restraints. [Doc. no. 80 SAC ¶21; Doc. no. 83-9 Bach Decl. ¶ 7.]  Defendant Bach told Plaintiff he would use double cuffs. [Doc. no. 80 SAC ¶21; Doc. no. 83-9 Bach Decl. ¶ 7.]  According to Defendant Bach, he used double cuffs to accommodate Plaintiff's medical chronology because double cuffs "do not pull the arms as far behind the back as normal handcuffs and cause less discomfort."  [Doc. no. 83-9 Bach Decl. ¶7.] Plaintiff asserts Defendant Bach did not actually use double cuffs but used traditional handcuffs, and forcibly grabbed Plaintiff's arms tightly behind his back.  [Doc. no. 87-1 Pl's Opp. MSJ 9:7-9; Doc. no. 93-4 Pl's Statement of Controverted Facts ("SCF") ¶5.]

Plaintiff claims Defendant Bach, after handcuffing him, "suddenly grabbed the neck-collar of [his] jacket and slammed [his] forehead into the solid concrete wall of [his] cell" while Defendants Castillo, Davila, and Taylor watched.  [Doc. no. 80 SAC ¶23; Doc. no. 93-2 Nwandu Decl. ¶18.] Further, Defendant Bach and Castillo, while escorting Plaintiff out of his cell to the Program Office, kicked, pushed, and punched Plaintiff in the sides, chest, abdomen, and head and also slammed his forehead into the grill gate and yard gate.  [Doc. no. 80 SAC ¶¶27-30; Doc. no. 93-2 Nwandu Decl. ¶¶20-22.]  In the yard outside the housing unit, out of view of other inmates, Defendants Bach and Castillo kicked, punched, and repeatedly dragged Plaintiff on the ground.  [Doc. no. 80 SAC ¶31.]  Plaintiff claims he "did not resist or threaten defendants in any fashion or break any prison rules" and also claims force was not applied in a good faith effort to maintain or restore discipline, but was  "brutal[,] []malicious[,]and sadistic."  [Doc. no. 80 SAC at ¶¶35-37]  Defendants assert Plaintiff attempted to pull away from Defendants' grasp and grabbed the equipment on their belts while screaming obscenities.  [Doc. no. 83-2 Castillo Decl. ¶3 and  ¶5; Doc. no. 83-7 Taylor Decl. ¶4 and Ex. A; Doc. no. 83-9 Bach Decl. ¶8-9 and Ex. A.] To gain control of Plaintiff, Defendants Bach and Castillo took control of his arm and shoulder. [Doc. no. 83-9 Bach Decl. Ex. A.]  According to Defendants, "at no point during the incident did [they] ever strike or push [Plaintiff], and did not ever push his head into any wall or door" and

1   only used the amount of force necessary to control Plaintiff's resistance. [Doc. no. 83-2 Castillo

2   Decl. ¶5; Doc. no. 83-9 Bach Decl. ¶9; Doc. 83-7 Taylor Decl. ¶5 and Ex. A.]

3       Plaintiff next alleges Defendants Davila and Taylor destroyed or lost some of his personal

4   and legal property when conducting an inventory while he was held in Administrative

5   Segregation ("Ad-Seg"). [Doc. no. 87-1 Pl's Opp. MSJ at 5:19-28–6:1-5; Doc. no. 80 SAC ¶57;

6   Doc. no. 93-4 Pl's SCF ¶11.] Plaintiff signed the inventory form presented to him by Ad-Seg

7   officers on the date of the incident, March 1, 2005, indicating his agreement all of his property

8   was listed, and also signed the inventory form on April 8, 2005, when he was released from Ad-

9   Seg, indicating all his property was returned to him at that time. [*Id.*] Plaintiff claims he was

10  coaxed into signing an inaccurate inventory form under duress. [Doc. no. 93-4 Pl's SCF ¶¶10-

11  11.] He did not have the opportunity to read the inventory form because he did not have his

12  reading glasses with him and Ad-Seg officers told him if he did not sign the list at that time, his

13  property would be thrown away. [Doc. no. 93-4 Pl's SCF ¶¶10-11.]

14      Plaintiff further asserts he is being retaliated against for filing a Form 602 Inmate Appeal

15  against Defendant Bach sometime in 1999 or 2000 while he was incarcerated at Centinela State

16  Prison. [Doc. no. 93-2 Nwandu Decl. ¶6-12.] At that time, Defendant Bach was positioned as a

17  yard tower officer at Centinela State Prison and dispersed an inmate fight by firing his weapon

18  into an area of the yard where Plaintiff was standing. [Doc. no. 83-9 Bach Decl. ¶3-4; Doc. no.

19  93-2 Nwandu Decl. ¶6-7.] Defendant Bach maintains he was unaware of any grievance

20  proceeding arising out of that incident and was not charged with any wrongdoing in connection

21  with the incident. [Doc. no. 83-9 Bach Decl. ¶4-5.] According to Plaintiff, when Defendant

22  Bach and Plaintiff crossed paths again at Calipatria State Prison, Defendant Bach recognized

23  Plaintiff and sought to retaliate against him for filing a grievance regarding the Centinela State

24  Prison incident. [Doc. no. 93-4 Pl's SCF ¶12.] Plaintiff did not have any disputes with

25  Defendants Castillo, Davila, or Taylor before March 1, 2005, but Plaintiff claims Defendant

26  Bach requested cooperation from Defendants Castillo, Davila, and Taylor to retaliate against

27  Plaintiff. [Doc. no. 93-5 Pl's SCF ¶12; Doc. no. 93-4 Pl's SCF ¶12.]

28

Additionally, Plaintiff alleges Defendants Bach, Castillo, Taylor, and Davila engaged in a conspiracy to chill Plaintiff's use of the prison grievance system.  Plaintiff observed all four Defendants "congregating at the podium in [Building A-4 on March 1, 2005] to carry out their plan," even though only two floor officers typically man the podium in all buildings. [Doc. no. 80 SAC ¶58; Doc. no. 93-4 Pl's SCF ¶6.]   Furthermore, Defendants Castillo, Davila, and Taylor stood behind Defendant Bach as he placed Plaintiff in handcuffs and slammed his forehead into the concrete wall, constituting a conspiracy to chill his use of the prison grievance system. [Doc. no. 80 SAC ¶58; Doc. no. 93-4 Pl's SCF ¶6.]

After the escort from his cell to the Program Office, Plaintiff was seen by Medical Technician Assistant ("MTA") Yu. [Doc. no. 83-4 Yu Decl. Ex. A; Doc. 93-4 Pl's SCF Ex. A..] The Medical Report of Injury or Unusual Occurrence dated March 1, 2005, documents Plaintiff's complaints of shoulder and wrist pain. [*Id.*]  It documents discoloration of, and abrasions to, Plaintiff's wrists and Plaintiff's complaints of shoulder pain.  [*Id.*]  MTA Yu noted Plaintiff was alert, had a good strong grip, and was in no obvious distress. [*Id.*]  MTA Yu also noted Plaintiff's statement, "they used excessive force on me," but did not note any other physical injuries or any injury to his head, nor did Plaintiff complain of any head injury.  [Doc. no. 83-4 Yu Decl. ¶3.]  Plaintiff asserts the report did not document the injuries to his head, knee, or waist because MTA Yu was called out of the room before examining his head or knee, and discontinued the examination when he returned. [Doc. no. 80 SAC ¶44; Doc. no. 93-2 Nwandu Decl. ¶25.]

As a result of the March 1, 2005 incident, Plaintiff claims he received "abra[]sions and lacerations to his wrists and knees, abrasions and bruises to his forehead and head, and excruciating pain to his head, shoulders, neck, lower back, waist, elbows, wrists, knees, and ankles." [Doc. no. 80 SAC ¶34.]  Plaintiff also claims he has a fractured proximal fibula in his left knee as a result of the incident. [Doc. no. 87-1 at 9:25-29.]   Plaintiff asserts the medical reports dated March 30, 2009, confirm the fracture and establish the fracture is a result of the March 1, 2005 incident because the injury is consistent with the left knee pain he complained of

1  in the video interview following the incident. [Doc. no. 93-4 at 8:1-16; Doc. no. 93-4 Pl's SCF

2  Ex. A.]

3                              **III.  PROCEDURAL HISTORY**

4          Plaintiff filed a complaint on May 5, 2006, pursuant to 42 U.S.C. §1983 arising out of the

5  events at Calipatria State Prison on March 1, 2005.  On September 28, 2007, the Honorable

6  Larry A. Burns granted in part, and denied in part, Defendants' motion to dismiss Plaintiff's

7  complaint. [Doc. no. 35.]   On October 29, 2007, Plaintiff filed a first amended complaint where

8  he alleged only property deprivation and conspiracy and failed to re-allege his claims for

9  excessive force and deliberate indifference that survived the motion to dismiss.  [Doc. no. 36.]

10 On September 29, 2008, the Honorable Larry A. Burns denied Defendants' motion to dismiss

11 Plaintiff's first amended complaint. [Doc. no. 49.]  On October 1, 2009, the court granted

12 Plaintiff leave to file a second amended complaint, alleging claims for excessive force and

13 deliberate indifference to medical needs in violation of the Eighth Amendment, retaliatory

14 property deprivation in violation of the First and Fourteenth Amendments, and conspiracy.

15 [Doc. nos. 78 and 80.]

16         On November 9, 2009, Defendants filed the instant Motion for Summary Judgment as to

17 all claims in Plaintiff's Second Amended Complaint. [Doc. no. 83.]  On December 16, 2009

18 Plaintiff filed an opposition to the motion for summary judgment, and on January 5, 2010, filed a

19 proposed Statement of Controverted Facts and his verified declaration.  [Doc. nos. 87-1 and 93-1

20 Pl's Opp. to MSJ; Doc. no. 93-2 Nwandu Decl.; Doc. no. 93-4 Pl's SCF.]

21                          **IV.  SUMMARY JUDGMENT STANDARD**

22         Summary judgment is appropriate when "the pleadings, the discovery and disclosure

23 materials on file, and any affidavits show that there is no genuine issue as to any material fact

24 and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Judgment

25 must be entered "if under the governing law, there can be but one reasonable conclusion as to the

26 verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986).  However, "if reasonable

27 minds could differ," judgment should not be entered in favor of the moving party. *Id.*

28

                                        6

The moving party has the initial burden of production to demonstrate the absence of any genuine issue of material fact. *Playboy Enterprises, Inc. v. Netscape Communications Corp.*, 354 F.3d 1020, 1023-24 (9th Cir. 2004).  If the moving party does not bear the burden of proof at trial, he may discharge his burden of showing no genuine issue of material fact remains by demonstrating "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).   A fact is material when, under the governing substantive law, it could affect the outcome of the case and requires a trial to resolve the parties' differing versions of the truth.  *Anderson*, 477 U.S. at 258-49 (1986)).   More than a "metaphysical doubt" is required to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The burden then shifts to the nonmoving party who must go beyond the pleadings and set forth specific facts showing a genuine issue for trial.  *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).   It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his pleadings."  *Anderson,* 477 U.S. at 256.

Moreover, where, as here, the nonmoving party is *pro se*, a court must consider as evidence in opposition to summary judgment all contentions "offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [the party appearing *pro se*] attested under penalty of perjury that the contents of the motions or pleadings are true and correct."  *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).  *Pro se* pleadings must be liberally construed because the "court recognizes that it has a duty to ensure that *pro se* litigants do not lose their right to a hearing on the merits due to ignorance of technical procedural requirements." *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1990).

While the district court is "not required to comb the record to find some reason to deny a motion for summary judgment," the court may nevertheless exercise its discretion in "appropriate circumstances" to consider materials in the record which are on file but not specifically referred to.  *Forsberg v. Pacific N.W. Bell Tel. Co.*, 840 F.2d 1409, 1417-18 (9th Cir.

1988); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001). However, the court need not "examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the moving papers with adequate references so that it could be conveniently found." *Id.*

"On summary judgment, the inferences to be drawn from the underlying facts contained in the materials must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).   The nonmoving party need not establish a material issue of fact conclusively in its favor, rather, it is sufficient if "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).   Nonetheless, not every factual dispute will defeat summary judgment. The summary judgment standard requires that there be no "genuine" issue of material fact. Fed. R. Civ. P. 56(c).   A dispute is genuine as to a material fact only if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248.   To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Matsushita,* 475 U.S. at 587.

## V.  DISCUSSION

Defendants move for summary judgment on the ground there is no genuine issue of material fact regarding Plaintiff's 42 U.S.C. §1983 claims for (1) excessive force in violation of the Eighth Amendment as against Defendants Bach and Castillo; (2) deliberate indifference to medical needs in violation of the Eighth Amendment as against Defendants Bach and Castillo; (3) retaliatory property deprivation in violation of the First and Fourteenth Amendments as against Defendants Taylor and Davila; and (4) conspiracy as against Defendants Bach, Castillo, Taylor, and Davila.

### A.  Eighth Amendment Excessive Force Claim

Plaintiff alleges Defendants Bach and Castillo used excessive force against him in violation of the Eighth Amendment.  Specifically, Plaintiff alleges Defendant Bach, after twisting his arms and handcuffing them tightly behind his back, "suddenly grabbed the neck-collar of [P]laintiff's jacket and slammed [his] forehead into the solid concrete wall of [his] cell." [Doc. no. 80 SAC ¶¶22-23.]   Plaintiff next claims Defendants Bach and Castillo, when escorting him from his cell to the Program Office, used excessive force by "punching, kicking, pulling and pushing [him], . . . twisting [his] tightly cuffed hands and arms in all directions[,]" and slamming his forehead into the grill gate and yard gate. [Doc. no. 80 SAC ¶26.]   Plaintiff further alleges Defendant Castillo "kicked and punched [him] in the sides, chest, abdomen, and head" while escorting him to the Program Office. [Doc. no. 80 SAC ¶29.]

The "unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (quoting *Ingraham v. Wright*, 430 U.S. 651, 670 (1977)).  When prison officials stand accused of using excessive physical force in violation of the Eighth Amendment, the core judicial inquiry is "whether force was used in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian et al.*, 503 U.S. 1, 7 (1992).  To determine whether a prison official's use of force was "malicious and sadistic" for the purpose of causing harm, the court must examine five factors: (1) the need for application of force; (2) the relationship between the need and the amount of force used; (3) the threat reasonably perceived by the responsible officials; (4) any efforts made to temper the severity of the forceful response; (5) the extent of injury suffered by an inmate. *Id.*  In weighing these factors, "unless it appears that the evidence viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard," the case should not go to the jury. *Whitley*, 475 U.S. at 322.

As an initial matter,  the record establishes there was a need for some application of force to restore order.  It is undisputed Defendants instructed Plaintiff that inmate Wilson was assigned to his cell. [Doc. no. 80 SAC ¶6; Doc. no. 83-9 Bach Decl. ¶6.]  Plaintiff does not challenge he

1  had a dispute with Wilson over whether they would share a cell.  [*Id.*]  Plaintiff attempts to

2  create a genuine issue of fact by claiming Wilson lied to Defendants about Plaintiff's threats and

3  Wilson himself refused to move into the cell. [Doc. no. 93-2 Nwandu Decl. ¶¶16-17.] Even

4  assuming Wilson lied to Defendants about Plaintiff's threats, Plaintiff does not dispute

5  Defendants understood Plaintiff was threatening Wilson as he attempted to move into the cell.

6  [Doc. no. 80 SAC ¶16; Doc. no. 83-7 Taylor Decl. ¶3 and Ex. A.]

7          It is well settled "officials confronted with a prison disturbance must balance the threat

8  unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates

9  may suffer if guards use force." *Hudson*, 503 U.S. at 7.  Correction officers must balance the

10  need to "maintain order and discipline" against the risk of injury to inmates, and "must make

11  their decisions in 'haste, under pressure, and frequently without the luxury of a second chance."

12  *Id.* at 6.   In light of this, " '[p]rison administrators . . . should be accorded wide-ranging

13  deference in the adoption and execution of policies and practices that in their judgment are

14  needed to preserve internal order and discipline to maintain institutional security.' " *Whitley*, 475

15  U.S. at 321-22.  Moreover, the Constitution does not prohibit uses of force that appear

16  unreasonable in hindsight, so long as the officers were acting in good faith and for a legitimate

17  end. *Whitley,* 75 U.S. at 322.

18          Restraining Plaintiff to remove him from his cell following a dispute with another inmate

19  is appropriate to maintain institutional security.  Plaintiff failed to present specific material facts

20  indicating there was no need for application of force or that it was done with wantonness or an

21  intent to maliciously and sadistically cause harm. *See Keenan v. Allen*, 91 F.3d 1275, 1279 (9th

22  Cir. 1996) (the nonmoving party has the burden of identifying, with reasonable particularity, the

23  evidence precluding summary judgment).  Rather, the evidence establishes force was needed to

24  restrain a non-complying inmate involved in a dispute with another inmate.  This need is further

25  corroborated by the undisputed fact that when Defendant Davila first asked Plaintiff to cuff up,

26  he responded, "You might want to have me speak to your supervisor." [Doc. no. 80 SAC ¶20;

27  Doc. no. 93-2 Nwandu Decl. ¶17.]  Plaintiff alleges there was no need for force because "rather

28  than hav[ing] issue with [i]nmate Wilson for refusing to move into [P]laintiff's cell, [Defendant

1   Davila] told [P]laintiff to cuff up." [Doc. no. 80 SAC ¶19.]  This claim, however, is immaterial

2   in light of the "wide-ranging deference in the adoption and execution of policies and practices

3   that in [prison officials'] judgment are needed to preserve internal order and discipline to

4   maintain institutional security.' " *Whitley*, 475 U.S. at 321-22.   The need for application of force

5   is further established by Defendant Bach's contention, which Plaintiff does not dispute with any

6   evidence, it was near the time for count and he needed to get the matter resolved quickly. [Doc.

7   no. 83-9 Bach Decl. ¶7.]

8           Defendants contend they are entitled to summary judgment because they "used only the

9   amount of force necessary to control Plaintiff during the escort."  However, Defendants have not

10  met their initial burden of demonstrating the absence of disputed issues of material fact.

11  Defendants contend Plaintiff resisted by pulling away from their grasps and grabbed at the

12  equipment on their belts, while screaming obscenities. [Doc. no. 83-2 Bach Decl. ¶5 and Ex. A;

13  Doc. no. 83-9 Castillo Decl. ¶9 and Ex. A.]

14          Plaintiff alleges he "did not resist or threaten [D]efendants in any fashion." [Doc. no. 80

15  SAC ¶35.]  Plaintiff further asserts he could not resist Defendants Bach and Castillo because his

16  hands were cuffed tightly behind his back, making it too painful to resist, and was outsized by

17  Defendants such that he could not resist them. [Doc. no. 93-1 Pl's Opp. MSJ at 4:5-10.]

18           The Medical Report of Injury or Unusual Occurrence completed by MTA Yu documents

19  the following injuries, which are confirmed by Plaintiff's videotaped interview following the

20  incident: [Doc. no. 83-4 Yu Decl. and Ex. A; Videotaped Interview, March 1, 2005.]

21                  (1) left wrist abrasion approximately 1/4 inch long;

22                  (2) right wrist abrasion approximately 1/2 inch long;

23                  (3) discoloration in both wrists; and

24                  (4) left shoulder pain and numbness in left arm.

25

26

27

28

1       Plaintiff's medical records document continued hand and shoulder pain in the months

2 following the incident:

3           (1) Dated April 1, 2005, Plaintiff's Health Care Services Request Form states,

4           "My left elbow pain is getting excruciatingly more painful . . . and my shoulders

5           are very painful." [Doc. no. 93-4 Pl.'s Opp. MSJ, Ex. E.]

6           (2) Dated July 2, 2005, Plaintiff's Health Care Services Request Form states,

7           "there is an excruciating pain in my right hand, specifically on the back of it, that

8           impedes my activities, including exercising and writing." [Doc. no. 93-4 Pl's Opp.

9           MSJ, Ex. E.]

10      Defendants contend Plaintiff's injuries to his wrists are "consistent with his resistance" to

11 Defendants Bach and Castillo, and are "the result of his own resistance" to them.  [Doc. no. MSJ

12 5:21-23.]  However, Defendants' argument assumes the very fact in dispute, whether Plaintiff

13 resisted Defendants during the escort.  On the one hand are Defendants' declarations and

14 incident reports suggesting Plaintiff resisted them, and on the other hand, is Plaintiff's

15 declaration stating he did not resist Defendants at any time or in any fashion. [Doc. no. 80 SAC

16 ¶¶35-37.]  Viewing the facts in the light most favorable to Plaintiff, a reasonable jury could

17 conclude Plaintiff's undisputed medical records and videotaped interview documenting the

18 abrasions and lacerations to his wrists, numbness in arm, and shoulder pain are consistent with

19 Defendants use of excessive force against Plaintiff.  Accordingly, there is a dispute of material

20 fact as to whether Plaintiff resisted Defendants during the escort to the Program Office.

21      Plaintiff also attempts to create a genuine issue of fact by claiming MTA Yu did not

22 complete the examination on March 1, 2005.  Specifically, he claims MTA Yu began a

23 "short-lived examination of [his] injuries and only looked at [his] wrists and arms" before being

24 called out of the room, and after returning, discontinued the examination. [Doc. no. 93-2

25 Nwandu Decl. ¶25.]  However, Plaintiff has failed to present any further evidence which would

26 corroborate his claim that MTA Yu's examination was incomplete as opposed to brief. *See Bias*

27 *v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007)("In opposing summary judgment, a

28 nonmoving party must . . . designate specific facts showing that there is a genuine issue for

1   trial.")

2          Defendants further contend they never struck or pushed Plaintiff, nor did they push his

3   head into any wall or door, which is supported by any apparent injury to Plaintiff's head.  [Doc.

4   no. 83-9 Bach Decl.¶9; Doc. no. 83-2 Castillo Decl. ¶5.] The Medical Report of Injury or

5   Unusual Occurrence prepared by MTA Yu does not document any physical injuries other than

6   those on Plaintiff's wrists, shoulder, and arms. [Doc. no. 83-4 Yu Decl.  and Ex. A.] Specifically,

7   the medical report and MTA Yu's declaration do not document any injury to Plaintiff's head

8   which would support Plaintiff's claim Defendants Bach and Castillo slammed his forehead into

9   the concrete wall, metal grill gate, and steel yard door. [Doc. no. 83-4 Yu Decl. and Ex.A.]

10          Plaintiff refutes Defendants' contentions by alleging he had "abrasions to his forehead

11   and head." [Doc. no. 80 SAC ¶34.] In the video interview, Plaintiff states the color of his skin

12   makes bruises difficult to observe and complains of a bump on the top of his head, though he

13   claims it is a result of handcuffs being pulled over his head. [Videotaped Interview, March 1,

14   2005.]  Plaintiff further alleges he was wearing a watch cap during the escort, preventing any

15   apparent lacerations and abrasions to his head, but certainly not preventing the impact of being

16   slammed into a concrete wall and steel doors. [Doc. no. 93-4 Pl's SCF ¶9.]  This is corroborated

17   by Plaintiff's undisputed medical records.  In Plaintiff's Health Care Services Request Form,

18   dated March 25, 2005, he complains of dizziness and two weeks of persistent headaches. [Doc.

19   no. 93-4 Pl's Opp. MSJ, Ex. E.] Further, in Plaintiff's Health Care Services Request Form, dated

20   April 1, 2005, he complains his "head hurts more than ever." [Doc. no. 93-4 Pl's Opp. MSJ, Ex.

21   E.]

22           Plaintiff's declaration stating the fact that he was wearing a watch cap during the

23   incident, which is not specifically refuted by Defendants, is sufficient to establish a genuine

24   issue of material fact. *See SEC v. Phan*, 500 F.3d 895, 909-910 (9th Cir. 2007)("Only in certain

25   instances-such as when a declaration 'state[s] only conclusions [or facts beyond the declarant's

26   personal knowledge], and not such facts as would be admissible in evidence'-can a court

27   disregard a self-serving declaration for purposes of summary judgment.")  Defendants argue,

28   "When asked why his head showed no signs of injury, [in the video interview], [Plaintiff's]

13

explanation was that his head was 'very hard'. Later, he claimed that the reason his head showed no injury was that he had been wearing beanie during the escort."[1] [Doc. no. 80 MSJ 5:14-17.] Defendants appear to be arguing Plaintiff's statements are inconsistent.  However, it is for the jury to decide the meaning to give to each statement, and whether the statements are inconsistent or have the same meaning. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(the nonmoving party need not establish a material issue of fact conclusively in its favor, rather, it is sufficient "that the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.")  Resolving all factual disputes in favor of Plaintiff, the Court finds Plaintiff has created a genuine issue of material fact as to whether Defendants slammed his head into a concrete wall and grill gate. A reasonable jury could conclude the undisputed medical records documenting Plaintiff's persistent headaches and dizziness in the weeks following the incident corroborate  Plaintiff's contention Defendants slammed his head into a concrete wall and grill gate, and that wearing a watch cap prevented any visible bruises or abrasions.

Additionally, a dispute of material fact exists as to the extent of Plaintiff's injuries as a result of the incident.  Defendants argue, "Plaintiff's only injuries– abrasions to his wrists– were caused by his own resistance . . . . Plaintiff had no other injuries." [Doc. no. 83-1, 5:21-23.] However, in Plaintiff's videotaped interview he complains of left knee pain, numbness in arms, and shoulder pain. [Videotaped Interview, March 1, 2005.]  Further, the Medical Report of Injury or Unusual Occurrence prepared by MTA Yu also documents more than just abrasions to his wrists, but also documents shoulder pain and left arm numbness. [Doc. no. 83-4 Yu Decl., Ex. A.] While Plaintiff's medical records from 2009 indicate he suffered a broken fibula in his left knee, the Court notes Plaintiff failed to present any evidence establishing it was caused by the incident on March 1, 2005.  Nonetheless, the Court finds the record as a whole demonstrates a triable issue as to the nature, extent, and severity of Plaintiff's injuries.

The Court finds disputed issues of material fact exist as to whether Plaintiff resisted

---

[1]Defendants cite to Plaintiff's deposition for this proposition [Plt's Depo. at 71:22-72:1], which was not attached to their Motion for Summary Judgment.

1  Defendants during the escort, whether Defendants slammed Plaintiff's head against a concrete

2  wall and steel doors, and the severity of Plaintiff's injuries.  Thus, Defendants have not met their

3  initial burden of demonstrating the absence of disputed material facts as to Plaintiff's Eighth

4  Amendment excessive force claim.  **It is therefore RECOMMENDED** the District Court

5  **DENY** Defendant's Motion for Summary Judgment as to Plaintiff's Eighth Amendment

6  excessive force claim against Defendants Bach and Castillo.

7             **B. Eighth Amendment Claim for Deliberate Indifference to Medical Needs**

8             Defendants Bach and Castillo move for summary judgment on the ground there is no

9  genuine issue of material fact regarding Plaintiff's claim for deliberate indifference to medical

10  needs, nor is there evidence to support the claim.

11            An Eighth Amendment violation occurs when prison officials are "deliberately

12  indifferent to a serious threat to the inmate's safety." Farmer v. Brennan, 511 U.S. 825, 837

13  (1994).  There is both an objective and subjective component to an actionable Eighth

14  Amendment violation. First, the plaintiff must show the alleged deprivation was, in objective

15  terms, "sufficiently serious." Id. at 834.  A "serious" medical need exists if the "failure to treat a

16  prisoner's condition could result in further significant injury or the 'unnecessary and wanton

17  infliction of pain'." *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) *(citing McGuckin v.*

18  *Smith*, 974 F.2d 1050, 1059 (9th  Cir. 1992) *overruled on other grounds by WMX Technologies,*

19  *Inc. V. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997)).  Second, the plaintiff must show the prison

20  official had a "sufficiently culpable state of mind," acting with "deliberate indifference." *Id.*

21  "Deliberate indifference" is established only when the "official knows of and disregards an

22  excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837; *see also Estelle v. Gamble,*

23  429 U.S. 97, 104-05 (1976); *McGuckin v. Smith,* 974 F.2d at 1059 (9th Cir.1992).  The prison

24  official must not only "be aware of facts from which the inference could be drawn that a

25  substantial risk of serious harm exists," but that person "must also draw the inference." *Id.*  "If a

26  [prison official] should have been aware of the risk, but was not, then the [official] has not

27  violated the Eighth Amendment, no matter how severe the risk." *Gibson v. County of Washoe,*

28  *Nevada,* 290 F.3d 1175, 1188 (citation omitted).

Defendants do not contest the serious nature of Plaintiff's medical needs, nor do they raise the issue. Rather, Defendants contend they are entitled to summary judgment because Plaintiff cannot demonstrate Defendants acted with "deliberate indifference." The parties do not dispute Plaintiff told Defendant Bach he had a medical chronology, which recommended Plaintiff be placed in waist restraints for arthritis in his shoulders. [Doc. no. 80 SAC ¶¶21 and 33; Doc. no. 83-9 Bach Decl. ¶ 7.] Plaintiff alleges Defendant Bach disregarded this medical chronology and "forcibly twisted [his] arms and cuffed [his] hands tightly behind [his] back [] at the wrists, causing [] excruciating pain." [Doc. no. 80 SAC ¶[22.]

Defendants argue they were not deliberately indifferent to Plaintiff's medical needs because "in order to accommodate any medical concerns he had, [Defendants] used double cuffs, which do not pull the arms as far behind the back as normal handcuffs and cause less discomfort." [Doc. 83-9 Bach Decl. at ¶7; Doc. 83-1 MSJ at 6:23-24.] Defendants' argument implies the failure to use double cuffs constitutes deliberate indifference. Further, Defendants' argument relies on a disputed material fact. Indeed, Plaintiff contends Defendants did not use double cuffs but used regular cuffs which he noticed when Defendants removed the cuffs in the Program Office. [Doc. no. 93-4 Pl's SCF at 14:20-25; Doc. no. 87-1 at 9:7-9.] Moreover, the Medical Report of Injury or Unusual Occurrence, MTA Yu's Declaration, and the videotaped interview of Plaintiff shortly after the incident, documenting abrasions to, and discoloration of, Plaintiff's wrists along with shoulder pain create a triable issue as to whether Defendants actually used double cuffs. [Doc. no. 83-4 Yu Decl. ¶3 and Ex. A; Videotaped Interview, March 1, 2005.] Accordingly, viewing the facts in the light most favorable to Plaintiff, there is a genuine issue of material fact as to whether Defendants Bach and Castillo were deliberately indifferent to Plaintiff's medical needs. It is **therefore RECOMMENDED** the District Court **DENY** Defendants' Motion for Summary Judgment with respect to Plaintiff's claim for deliberate indifference to medical needs against Defendants Bach and Castillo.

### C.  Retaliatory Property Deprivation

Defendants Davila and Taylor move for summary judgment on the ground there is no genuine issue of material fact regarding Plaintiff's retaliatory property deprivation claim, nor is there evidence to support the claim.

A plaintiff may bring a claim of retaliation for the exercise of his First Amendment rights under 42 U.S.C. § 1983.  *Mt. Healthy City Bd. Of Educ. v. Doyle*, 429 U.S. 274, 293-84 (1977).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  *Rhodes v. Robinson*, 408 F.3d 449, 567-68 (9th Cir. 2005).  In meeting this standard, the prisoner must submit evidence establishing a specific link between the alleged retaliation and the exercise of a constitutional right. *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995).  Moreover, retaliation claims are evaluated in light of the deference generally accorded prison officials trying to manage a volatile environment.  *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995).  The plaintiff has the burden of demonstrating that the exercise of his First Amendment rights was the substantial or motivating factor behind the defendant's' conduct. *Mt. Healthy City School Dist. Bd. of Educ.,* 429 U.S. at 287, 297 (1977); *Soranno's Gasco, Inc. v. Morgan,* 874 F.2d 1310, 1314 (9th Cir.1989).

Defendants argue they are entitled to summary judgment because it is undisputed Defendants Davila and Taylor legitimately collected Plaintiff's property in order to conduct an inventory pursuant to California statute. [Doc. no. 83 MSJ.]  Defendants argue collecting and inventorying Plaintiff's property did not deprive Plaintiff of his property and served a legitimate correctional goal. [*Id.*]

However, Plaintiff's retaliatory property deprivation claim appears to be based on a different theory than that addressed by Defendants.  Plaintiff claims Defendants deprived him of his property when they destroyed and lost his personal and legal property after collecting and inventorying it, and cooperated with the Ad-Seg officers to coax Plaintiff into signing an

1  inaccurate inventory list. [Doc. no. 93-4 Pl's SCF ¶11.]  Specifically, Plaintiff asserts Defendants

2  Davila and Taylor destroyed and lost his legal property in retaliation for filing a grievance

3  against Defendant Bach regarding an incident at Centinela State Prison on or about 1999 or

4  2000. [*Id*. at ¶12.]

5          Even viewing the facts in the light most favorable to Plaintiff, as the court must on

6  summary judgment, Plaintiff has failed to prove two essential elements of his retaliatory

7  property deprivation claim: (1) causation; and (2) chilling of the exercise of his First

8  Amendment rights.  Plaintiff has failed to establish the causation element of his retaliation claim

9  because he has offered no evidence demonstrating Defendants Davila and Taylor destroyed and

10 lost his legal and personal property *because of* the protected conduct Plaintiff engaged in by

11 filing the grievance against Defendant Bach regarding the Centinela State Prison incident.

12 Plaintiff does not offer any evidence to dispute Defendant Bach's declaration he was unaware he

13 was involved in any grievance or was charged with any wrongdoing arising out of the incident.

14 [Doc. no. 83-9 Bach Decl. ¶4.]  Moreover, Plaintiff admits he never had any disputes with

15 Defendants Davila or Taylor before March 1, 2005.  [Doc. no. 93-4 Pl's SCF  6:8-10.]  Rather,

16 Plaintiff rests his retaliatory property deprivation claim on the theory Defendants Davila and

17 Taylor retaliated against him because prison guards have an "impenetrable camaraderie," "they

18 are a gang," and when a "shot-caller" of Defendant Bach's "rank and influence" requests

19 cooperation, a denial or refusal would result in ostracism. [Doc. no. 93-4 Pl's SCF  6:8-17.]

20 Nonetheless, Plaintiff has not proffered any factual support for his allegation Defendants Davila

21 and Taylor acted *because of* his protected conduct (filing a grievance against Defendant Bach).

22          Plaintiff has also failed to establish the alleged misconduct chilled his First Amendment

23 rights.  The prisoner must submit evidence establishing a specific link between the alleged

24 retaliation and the exercise of a constitutional right. *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir.

25 1995).  Plaintiff merely asserts the Defendants' conduct "chilled Plaintiff's First Amendment

26 rights" without presenting evidence establishing that, as a result of Defendants' conduct, he was

27 prevented from engaging in conduct protected by the First Amendment.  Specifically, Plaintiff

28 has not set forth specific facts showing how he exercised his First Amendment rights and the

1    manner in which his First Amendment rights were actually chilled by the supposed retaliatory

2    conduct.  Further, Plaintiff offers no evidence to refute Defendants' contention he has filed at

3    least fourteen grievances on various subjects since March 1, 2005. [Doc. no. 83-1 MSJ at 9:1-6;

4    Doc. no. 83-5 Bell Decl. at Ex. A; Doc. no. 83-6  Gonzalez Decl. and Ex. A.]   While "speech

5    can be chilled even when not completely silenced," Plaintiff has not presented any evidence to

6    raise a factual dispute and therefore, rests his claim on conclusory allegations insufficient to

7    defeat summary judgment. *Rhodes*, 408 F.3d at 568 (2005); *see also Taylor v. List,* 880 F.2d

8    1040, 1045 (9th Cir.1989) ("A summary judgment motion cannot be defeated by relying solely

9    on conclusory allegations unsupported by factual data.").  It is therefore **RECOMMENDED** the

10   District Court **GRANT** Defendants' Motion for Summary Judgment with respect to Plaintiff's

11   retaliatory property deprivation claim against Defendants Davila and Taylor. .

12             **D. Conspiracy in Violation of 42 U.S.C. §1983**

13            Defendants move for summary judgment on the ground there is no genuine issue of

14   material fact regarding Plaintiff's conspiracy claim, nor is there evidence to support the claim.

15            To prove a conspiracy in violation of 42 U.S.C. §1983, plaintiff must establish: (1) an

16   agreement between the defendants to deprive the plaintiff of a constitutional right; (2) an overt

17   act in furtherance of the conspiracy; and (3) a constitutional violation.  *Gilbrook v. City of*

18   *Westminster*, 177 F.3d 839, 856 (9th Cir. 1999); *Mendocino Environmental Center v. Mendocino*

19   *County*, 192 F.3d 1283, 1301 (9th Cir. 1999).  "To be liable, each participant in the conspiracy

20   need not know the exact details of the plan, but each participant must at least share the common

21   objective of the conspiracy." *Gilbrook*, 177 F.3d at 857-58.  Because conspiracies, by their very

22   nature, are secret agreements, "[a] defendant's knowledge of and participation in a conspiracy

23   may be inferred from circumstantial evidence and from evidence of the defendant's actions." *Id*.

24   For example, showing the alleged conspirators have committed acts "unlikely to have been

25   undertaken without an agreement" may allow a jury to infer the existence of a conspiracy.

26   *Mendocino*, 192 F.3d at 1301 (9th Cir. 1999) (*citing Kunik v. Racine County,* 946 F.2d 1574,

27   1580 (7th Cir.1991)).

28

The Court concludes Plaintiff has failed to create a genuine issue with respect to his conspiracy claim against Defendants.  Plaintiff has failed to demonstrate an agreement or meeting of the minds by Defendants to violate Plaintiff's constitutional rights. *Woodrum v. Woordward County*, 86 F.2d 1121, 1126 (9th Cir. 1989).  The only evidence offered in support of Plaintiff's claim is his allegation that on the day his legal and personal property was confiscated and destroyed, he observed "all four [Defendants] congregating at the podium in Building Unit Four to carry out their plan, even though only two floor officers man the podium in [that building]." [Doc. no. 80 SAC ¶58.]  Plaintiff also alleges Defendants "Castillo, Davila, and Taylor [stood] firmly behind [Defendant Bach] in front of Plaintiff's cell while he cuffed [P]laintiff's hands behind his back and slammed his forehead into the concrete wall . . . and [the] failure to stop what they should have known to be wrong . . . constituted a conspiracy to chill any future attempts by Plaintiff to utilize the prison grievance system." [Doc. no. 80 SAC ¶58; Doc. no. 93-4 Pl's SCF at 17:27-28-181-24.]   Defendants argue they were legitimately assigned to work in Facility A on the evening of March 1, 2005, and were present to resolve the dispute that had arisen between Plaintiff and proposed cellmate Wilson. [Doc. no. 83-1 MSJ at 10:9-14.]

Plaintiff has failed to provide any specific facts supporting the existence of an agreement or meeting of the minds to deprive him of his rights.  Although the existence of a conspiracy may be inferred from circumstantial evidence, Plaintiff has not offered any evidence beyond the allegations in his complaint to raise a triable issue as to whether Defendants had a "meeting of the minds" to violate his constitutional rights.  Rather, Plaintiff rests his claim on the bald assertion that all four Defendants congregated in Building Unit 4 and that this somehow constituted a conspiracy to chill his use of the prison grievance system.  *See Woodrum v. Woodward County,* 866 F.2d 1121, 1126 (9th Cir.1989) (dismissing conspiracy allegations because they were unsupported by material facts); s*ee also Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.1989) (unsupported conclusory allegations are insufficient to preclude summary judgment).

The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Keenan,* 91 F.3d at 1279 (9th Cir. 1996).  Plaintiff

1   has not carried his burden on summary judgment to demonstrate the evidence presented

2   establishes beyond controversy every essential element of his conspiracy claim.  It is therefore

3   **RECOMMENDED** the District Court **GRANT** Defendant's Motion for Summary Judgment

4   with respect to Plaintiff's conspiracy claim.

5       **E. Qualified Immunity**

6       Defendants assert the affirmative defense of qualified immunity.  Qualified immunity

7   shields § 1983 defendants "[f]rom liability for civil damages insofar as their conduct does not

8   violate clearly established statutory or constitutional rights of which a reasonable person would

9   have known.'" *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity protects

10  "all but the plainly incompetent or those who knowingly violate the law." *Clement v. Gomez*,

11  298 F.3d 898, 903 (9th Cir. 2002) (*citing Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  It

12  "shields government officials performing discretionary functions from liability for civil damages

13  unless their conduct violates clearly established statutory or constitutional rights of which a

14  reasonable person would have known.  In this way, it protects government officials from liability

15  for good faith misjudgments and mistakes." *Clement*, 298 F.3d at 903; *see also* Harlow, 457

16  U.S. at 818 (1982) (citations omitted).

17      Analysis of qualified immunity involves a two-step inquiry set forth by the Supreme Court

18  in *Saucier v. Katz*, 502 U.S. 224 (2001).  First, the court must determine whether, taken in the

19  light most favorable to the party asserting the injury, the facts alleged show the officer's conduct

20  violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If the answer to that

21  question is no, then the inquiry ends and defendants are protected by qualified immunity.  If the

22  court determines a constitutional violation occurred, the court must determine "whether the right

23  was clearly established." *Id.*   The contours of the right must be sufficiently clear that a

24  "reasonable officer would understand that what he is doing violates that right." *Id.*  If the law did

25  not put the prison officials on notice that their conduct would be clearly unlawful, summary

26  judgment based on qualified immunity is appropriate." *Id.* at 202.  In resolving these issues, the

27  court must view the facts in the light most favorable to plaintiff and resolve all material factual

28  disputes in favor of plaintiff. *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003).

1   Because qualified immunity is an affirmative defense, the burden of proof initially lies with the

2   prison official asserting the defense. [2] *Harlow*, 457 U.S. at 812.

3        Having concluded that triable issues of fact exist as to whether Defendants Bach and

4   Castillo used excessive force on Plaintiff and were deliberately indifferent to his medical needs

5   in violation of the Eighth Amendment, the court next addresses whether they are entitled to

6   qualified immunity.  The Court finds granting summary judgment on the ground of qualified

7   immunity is improper in this case.  A dispute of fact exists as to whether Plaintiff resisted

8   Defendants Bach and Castillo, whether they slammed Plaintiff's head into a concrete wall and

9   steel doors, and the severity of Plaintiff's injuries as a result of the incident.  Resolving all

10  factual disputes in favor of Plaintiff, the Court concludes Defendants violated Plaintiff's clearly

11  established right to be free from excessive force. *See Estelle v. Gamble,* 429 U.S. 97 (1976).

12  Granting summary judgment on the ground of qualified immunity is "improper if, under the

13  plaintiff's version of the facts, and in light of the clearly established law, a reasonable officer

14  could not have believed his conduct was lawful." *Schwenk v. Hartford*, 204 F.3d 1187, 1196 (9th

15  Cir. 2000).  Here, based on Plaintiff's version of the facts, a reasonably jury could conclude that

16  a reasonable officer would know that kicking, punching, and slamming Plaintiff's head against a

17  wall and steel gate, even though he did not resist or threaten them, violated clearly established

18  constitutional rights.

19       Additionally, a triable issue of fact exists as to whether Defendants were deliberately

20  indifferent to Plaintiff's medical needs because the parties dispute whether Defendants used

21  double cuffs on Plaintiff during the escort.  At the time of the incident, it was clearly established

22  that Defendants could not intentionally deny or delay access to medical care. *See Estelle v.*

23  *Gamble,* 429 U.S. 97 (1976).  Viewing the facts in the light most favorable to Plaintiff, a

24  reasonable jury could conclude Defendants were deliberately indifferent to his medical

25

26  [2] Defendants' analysis of whether they are entitled to qualified immunity is unhelpful to the Court because they incorrectly assumed the Court would determine there is no genuine issue of material fact as to whether Plaintiff's

27  constitutional rights were violated.  Indeed, Defendants' moving papers in support of their summary judgment motion states Plaintiff "can show no constitutional violations by Defendants" and therefore, "the inquiry ends and it

28  is not necessary to analyze whether any constitutional right of Plaintiff was clearly established and known to Defendants."  [Doc. 83-1 MSJ at 12.]

1    chronology.  Under such circumstances, Defendants actions are not protected by qualified

2    immunity.

3         Because the Court has found no triable issues of fact as to Plaintiff's retaliatory property

4    deprivation and conspiracy claims, the Court need not reach any issues regarding qualified

5    immunity with respect to those claims. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001)("If no

6    constitutional right would have been violated were the allegations established, there is no

7    necessity for further inquiries concerning qualified immunity.")  Accordingly, it is

8    **RECOMMENDED** summary judgment be **DENIED** on the issue of qualified immunity.

9                        **VI.   CONCLUSION AND RECOMMENDATION**

10        For the foregoing reasons, **IT IS HEREBY RECOMMENDED** the District Court issue an

11   Order:

12        (1) **DENYING** Defendants' motion for summary judgment on Plaintiff's Eighth

13              Amendment excessive force claim against Defendants Bach and Castillo**;**

14        (2) **DENYING** Defendants' motion for summary judgment on Plaintiff's Eighth

15              Amendment deliberate indifference to medical needs claim against Defendants Bach

16              and Castillo;

17        (3) **GRANTING** Defendants' motion for summary judgment on Plaintiff's retaliatory

18              property deprivation claim against Defendants Davila and Taylor**;**

19        (4) **GRANTING** Defendants' motion for summary judgment on Plaintiff's conspiracy

20              claim**;** and

21        (5) **DENYING** without prejudice, Defendants' request for qualified immunity with respect

22              to Plaintiff's claims for excessive force and deliberate indifference to medical needs.

23

24        This Report and Recommendation will be submitted to United States District Judge

25   Michael M. Anello.  Any party may file written objections with the court and serve a copy on all

26   parties **by May 7, 2010.**  The document should be captioned "Objections to Report and

27   Recommendation."

28

1    Any reply to the objections shall be served and filed **by May 21, 2010.**  The parties are

2  advised that failure to file objections within the specified time may waive the right to raise those

3  objections on appeal of the Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

4      **IT IS SO ORDERED.**

5    DATED: April 21, 2010

6

7                                      Hon. William McCurine, Jr.
                                       U.S. Magistrate Judge, U.S. District Court
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28